Filed 10/14/20  In re Ariah R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ARIAH R. et al., Persons Coming Under the Juvenile Court Law. | B305014 (Los Angeles County Super. Ct. No. CK80252) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. AMBER C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Amber C. (Mother) appeals from the juvenile court's orders denying her petition under Welfare and Institutions Code[1] section 388 and appointing the maternal aunt as the legal guardian for 12-year-old Ariah, 10-year-old Damian, and 9-year-old Serenity.[2]  Mother contends the juvenile court abused its discretion in denying her section 388 petition, and therefore the court also erred in appointing the maternal aunt as the children's legal guardian.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Prior Dependency Case*

On March 5, 2010 the juvenile court declared Ariah and Damian dependents of the court under section 300, subdivision (b)(1).  The court found true Damian suffered severe withdrawal symptoms and tested positive for amphetamine and methadone at birth, and Mother tested positive for methadone on November

_____

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

[2]    Amber's father also appealed, but we dismissed his appeal after his appointed appellate counsel filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 indicating counsel could not find any arguable issues.

2

21, 2009 and methamphetamine on December 16, 2009. On March 23, 2011 the court declared Serenity a dependent of the court under section 300, subdivision (b)(1), based on Joel R.'s (Father) history of illicit drug abuse and use of methamphetamine and amphetamine, including a December 15, 2010 positive test for methamphetamine and amphetamine and an October 20, 2010 arrest for being under the influence of a controlled substance. After Mother and Father completed family reunification services, the juvenile court terminated jurisdiction on August 1, 2012.

B.      *The Referral, Petition, and Detention*
        On March 21, 2017 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging Mother and Father emotionally abused and neglected the children. The caller reported Father used drugs daily in his car, was under the influence of drugs while in the home, and sold drugs from the home. Mother had a history of using methamphetamine, and neighbors suspected she was using drugs. Mother and Father denied the allegations and agreed to submit to drug testing.
        Mother stated the children were enrolled in mental health services because Ariah threw tantrums and behaved aggressively towards her siblings and Damian and Serenity mimicked Ariah's behavior. Ariah was diagnosed with depression; Damian was diagnosed with attention deficit hyperactivity disorder; and Serenity was diagnosed with adjustment disorder. Mother was very engaged in her children's mental health needs.
        Mother tested positive for methamphetamine and amphetamine on April 5, 2017. On May 23, 2017 the Department

3

filed a section 300 petition, which it later amended, alleging Mother and Father had a history of illicit drug use and used methamphetamine. Mother tested positive for amphetamines and methamphetamine on June 7, 2017 and failed to drug test on three dates in May and June. On June 30 the juvenile court detained the children, and placed them with the maternal aunt, Danielle R. The court granted Mother and Father monitored visitation and family reunification services.

C.  *The Jurisdiction and Disposition Report and Hearing*

According to the jurisdiction and disposition report, Mother tried methamphetamine with friends when she was 16 years old and used it consistently when she was 18. She met Father when she was 19 years old, and they used methamphetamine together. Mother stopped using methamphetamine when she had Ariah, but she started again while she was pregnant with Damian. Mother stated she had been sober for seven years and denied having any relapses. Mother stated her April 5, 2017 positive test result was caused by a diet pill her friend gave her. Mother blamed the drug testing site for the April 5 and June 7 positive test results, stating the site tampered or mislabeled her test specimens.

At the July 12, 2017 jurisdiction and disposition hearing, Mother waived her rights and pleaded no contest to amended count b-1 in the first amended section 300 petition. Amended count b-1 alleged Mother had an unresolved history of illicit drug use and was a recent user of methamphetamine, which periodically rendered Mother incapable of providing regular care and supervision of the children. Further, Mother tested positive for methamphetamine on April 5 and June 7, 2017, and the

4

children were former dependents of the court due to mother's substance abuse. Mother's illicit drug use and Father's failure to protect the children endangered the children's safety and placed them at risk of serious harm.

The juvenile court declared the children dependents of the court under section 300, subdivision (b)(1), and removed them from Mother's and Father's physical custody. The court ordered Mother to participate in a full drug program with aftercare and weekly random or on demand drug testing, parenting classes, and individual counseling to address case issues. The court granted Mother and Father monitored visits three times a week for a total of three hours.

D.    *The Six-month Review Period (July 2017 to January 2018)*

As of the January 9, 2018 six-month review status report, the children remained placed with Danielle. The children were participating in afterschool tutoring because they were all below grade level. In addition, Ariah had behavioral problems at school. Mother and Father visited the children two days each week and were appropriate with the children during visits. On June 15, 2017 Mother enrolled in a six-month substance abuse program and parenting classes. She was in full compliance with the program requirements and tested negative for drugs 24 times.

At the March 16, 2018 contested six-month review hearing, the juvenile court found Mother was in compliance with her case plan but Father was only in partial compliance with his plan. Over the Department's objection, the court granted Mother up to two hours of unmonitored visits each week. Father was not allowed to be present during Mother's visits.

5

E.      *The 12-month Status Review Period (February Through August 2018)*

Mother completed her six-month substance abuse program on February 16, 2018, but she tested positive on May 22 and June 15, 2018 and failed to show for testing on six days during March through June.  On June 19, 2018 Mother told the social worker she needed to be excused from testing because she had left early that morning to travel to New Mexico for work.  But the maternal aunt reported Mother was at the maternal aunt's house that day to help clean.  Mother denied she was using drugs and stated the testing results were incorrect.  On July 12, 2018 the juvenile court granted the Department's section 385 motion to return Mother to monitored visitation because of the two positive drug tests.

The September 4, 2018 12-month status review report stated the children remained placed with Danielle, who met their needs and provided them with a stable and safe home.  Danielle reported the children's behavior had improved with fewer tantrums and defiance.  Mother and Father had monitored visits with the children on Fridays for three hours at Danielle's home.  Danielle reported the parents were appropriate and the children were happy to see them.  The children stated they enjoyed their visits with Mother and Father.

Mother again tested positive for methamphetamine on July 5 and submitted a diluted sample on July 18, 2018.  Mother became upset when the social worker suggested Mother again enroll in an inpatient drug program.  Mother stated she had

completed her drug program and would not discuss the matter unless her attorney was present.

On August 7, 2018 Father was arrested for possession of heroin, methamphetamine, and drug paraphernalia after Los Angeles County sheriff's deputies conducted a traffic stop because of Father's expired vehicle registration. When the deputies approached the car, they saw Mother holding a large open beer can. When Father opened his car door to exit, a deputy saw a bundle of hypodermic needles on his lap. Father told the deputies he had been injecting heroin on a weekly basis for approximately a year. The deputies searched the vehicle and found a small bag containing 13 needles with heroin, a glass methamphetamine pipe with burnt residue, and a small plastic bag containing methamphetamine.

At the October 23, 2018 contested 12-month status review hearing, the juvenile court found the parents were not in compliance with their case plans. The court terminated family reunification services for Mother and Father.

F.      *The Section 366.26 and Status Review Reports*

The February 19, 2019 section 366.26 report stated Mother and Father had not visited the children since December 2018. The children had been placed with Danielle since June 27, 2017, and she wanted to be appointed the children's legal guardian. The children were happy in Danielle's home, but Ariah and Serenity wanted to live with Mother and Father. Ariah stated, "I want to go back to live with my parents. They didn't do anything wrong, everything [the social workers] said about them is not true. I like living here and my [aunt] treats me good but I just want to live with my mom and dad again." Damian said, "I'm

7

okay staying to live here.  I am happy here.  I like having my cats here."   Serenity reported, "I like living with my [aunt] but I just want to go back to be with my mom and dad.  I miss my mom and dad."  The Department recommended legal guardianship as the permanent plan for the children.

The April 9, 2019 status review report indicated Mother and Father had monitored visits with the children for two to three hours on Thursdays.  The parents were "appropriate and interact[ed] well with the children during visits."

G.     *Mother's Section 388 Petition*

On July 8, 2019 Mother filed a section 388 petition requesting return of the children to her custody, reinstatement of her family reunification services, or modification of the visitation order to unmonitored visits or increased monitored visitation.  Mother submitted evidence of her completion of a substance abuse program at S.O.B.E.R. International Community Counseling Center (SOBER) on May 16, 2019 with 11 negative drug test results; participation in an aftercare and a parenting program at SOBER; and a July 7, 2019 letter from therapist John A. DelGrosso stating Mother had been attending weekly individual counseling sessions since February 9, 2019.  Mother argued modification of the orders would be in the children's best interest because they were deeply bonded to her and would benefit emotionally from having more contact with her.

In its response, the Department recommended denial of Mother's petition.  The Department confirmed Mother had completed the substance abuse program, tested negative 11 times, started attending individual counseling, and enrolled in a parenting program.  Mother told the social worker she attended

weekly Narcotics Anonymous meetings, but Mother did not have a sponsor or provide an attendance sheet to the social worker. Notwithstanding Mother's completion of the programs, the Department recommended against reinstatement of family reunification services because Mother minimized her substance abuse. She continued to blame her April 5, 2017 positive drug test result on a diet pill her friend gave her, and the May 22, June 15, and July 5, 2018 positive test results on the drug testing sites. Mother denied she had an open can of beer in the car with Father, contrary to the August 7, 2018 police report. Mother claimed she purchased the beer for her sister and had the can in her purse to take to her sister.

The Department also expressed concerns about the statements made by Mother's and Father's drug counselor, Daniel Garcia. In an August 22, 2019 interview, Garcia, who was the president of SOBER, stated the substance abuse program was a six-month program that was held once a week for two-and-a-half hours. When the social worker asked Garcia whether he had received proof that Mother and Father had attended Narcotics Anonymous meetings, he indicated they did not need to give him proof of their attendance. Garcia stated he did not always do five panel drug tests; instead, he randomly selected the drugs that would be tested. He opined the Department "only wants tests that they can use against parents. . . . [A] lot of [s]ocial [w]orkers use test results for the client's disadvantage."

9

H.    *The Sections 388 and 366.26 Hearing*

The juvenile court held a hearing on Mother's and Father's section 388 petitions,[3] followed by the section 366.26 hearing over the course of three days in December 2019 and January 2020. Mother, Father, Garcia, and Mother's pastor George Bojorquez testified as witnesses.

Garcia testified he was the president and chief executive officer of SOBER, as well as the counselor for SOBER's substance abuse program. Garcia initially testified he was "certified and licensed to counsel" on substance abuse and licensed to conduct random drug tests. However, on cross-examination, he stated his business was licensed by the State of California "as a community counseling agency" (not a substance abuse counseling agency). He did not have any counseling degrees, but instead considered himself a peer counselor because he was a prior addict. Mother had completed SOBER's substance abuse and 10-class aftercare program, but she continued to take aftercare classes. Mother also completed a parent education program and took anger management classes. She submitted to 11 random drug tests while in the substance abuse program and eight while in the aftercare program, all of which were negative. Mother also submitted to additional drug tests since Garcia's last report in

---

[3] Father filed a separate section 388 petition on August 7, 2019 seeking return of the children to his custody, reinstatement of his family reunification services, or modification of the visitation order to allow unmonitored or more frequent visits.

October 2019.[4]  SOBER did not usually perform random drug testing in its aftercare program because the program was free, but Mother requested to be tested.

Garcia testified as to SOBER's random drug testing program, "[M]y random testing is random on days and random on drugs.  So every test could be changed or different from one to another.  One day, it could be one drug.  The next day, it could be three substances.  The next day it could be four.  I randomly change them because that is what I call random testing."  Garcia analyzed the urine tests himself.  Garcia was aware the Department had a concern about SOBER's drug testing.  Garcia felt he "opened up a can of worms" because he was not required to document Mother's and Father's negative drug test results.  Garcia added, "All 16 years of my testing and my counseling, I never [had] to prove and show an actual test.  That is my choice."  Garcia had worked with the Department in the past, and he came to realize the Department "didn't give [parents] props for the good that they did.  They only used what was bad against them."

Mother testified the substance abuse program taught her "how to stay away from [her] triggers."  Mother continued to attend weekly two-and-a-half hour aftercare classes because she wanted "to show the court that [she] will do anything in [her] strength to show them that [she] want[ed] to do this."  Mother also attended more than 15 Narcotics Anonymous meetings and individual counseling.  Mother's individual counseling sessions addressed her depression caused by her situation and taught her

---

[4]     Mother submitted to a total of 16 drug tests from September 5 to December 10, 2019 while in SOBER's aftercare program.

"how to turn the negative into positive." During her visits, Mother prepared meals for the children, talked to them about school and their day, did arts and crafts, played at the park, and bought the children remote control toys. When the children misbehaved, Mother gave them time-outs and asked them to reflect on their actions. At the end of the two-hour weekly visits, the children wanted to spend more time with her.

On cross-examination, Mother denied she had an open container of beer during the August 2018 traffic stop. She also denied Father had a dozen needles in his possession or admitted to using heroin during his arrest. According to Mother, the police lied, and Father's criminal case was terminated because it "was fabricated."[5] Mother continued to maintain the April 5, 2017 positive test result was caused by taking a diet pill she got from her friend. But Mother denied telling the social worker that the drug testing site was to blame for her other positive test results (except for one). As to one of the positive tests, Mother explained her "urine leaked into the bag and [the employee] put her hand in it with no gloves and wringed out the napkin and still sent it out." Mother admitted she was using drugs when she tested positive on June 7, 2017. Mother also admitted she had positive test results on May 22 and June 15, 2018. But she denied

_____

[5] Father submitted a criminal court minute order showing on July 17, 2019 the trial court ordered Father into a pretrial diversion program for possession of methamphetamine (Health & Saf. Code, § 11377; count 1) and possession of drug paraphernalia (Health & Saf. Code, §11364; count 2). On December 19, 2019 the court dismissed both counts after Father completed the diversion program.

12

knowledge of the July 5, 2018 positive test result and testified she was not using drugs in July 2018.

Bojorquez testified he was the pastor of the church Mother and Father attended and president of a family wellness business. Mother and Father were actively involved in the church and volunteered for many church activities since joining the church over a year earlier. Bororquez had been the visitation monitor for Mother's and Father's weekly two-hour visits for the past eight to nine months. Bororquez observed "the parents come well prepared with material, books, activities, lunch. There is a lot of interacting going [on], a lot of fun stuff with them. It seems like the kids are having a great time with them."

After the close of testimony, Mother's attorney argued Mother demonstrated changed circumstances by completing a substance abuse program and parenting classes and participating in individual counseling, Narcotics Anonymous meetings, and an aftercare program with random drug testing. Further, Mother tested negative for methamphetamine in her drug programs, and she had learned from her mistakes. Minor's counsel urged the court to deny Mother's and Father's petitions, arguing that although the parents had completed their substance abuse programs, "the parents are still making excuses and they are in denial about some of their substance abuse issues and their partner's drug use as well." Minor's counsel acknowledged the children loved Mother and Father and wanted to return home, but she did not believe it was in the children's best interest to return home because "both parents have denied, avoided, and crafted stories for their past drug use."

The Department's attorney vigorously opposed the petitions, arguing SOBER was a "kind of a joke," it was not

13

sponsored by the Department, and Garcia "had a chip on his shoulder" and was "biased against the Department." The Department's attorney expressed concern the testing was not a quantitative toxicology test, but rather, was a simple "litmus test" one could do at home in which an individual dips the sample into the solution.[6] He asserted the tests therefore "show[] no sobriety."

At the end of the section 388 hearing on January 7, 2020, the juvenile court denied Mother's and Father's petitions. The court found Garcia's drug testing was unreliable because he did not test Father for opiates even though heroin was Father's drug of choice. The court added, "Mr. Garcia is not a certified counselor. And I do agree that he showed some bias against the Department as evidenced by his statements about the Department is just out to get parents. They want to use the results of drug tests against the parents." Further, "I think Mother's continued position that one diet pill caused her positive test is not credible. I also believe that blaming the other positive test results from 2018 on the testing site is not credible." The court also found there was no evidence the police fabricated the arrest report. The court determined there "might be changing

---

[6]     The SOBER testing results provided to the court listed tests for cannabis, alcohol, "Meth Amphetamine," and "other," stated whether the test was positive or negative, and included an image of a testing kit labeled "The Detective" with the words "1 Line = Drug [¶] 2 Lines = No Drug." By contrast, the toxicology reports prepared by the laboratory for the Department in this case listed multiple methamphetamine isomers and amphetamine, and listed the specific numeric testing result and screening and confirming cut-off points for each result.

circumstances" but not "changed circumstances." The court stated, "I totally agree that the children are clearly bonded to these parents. In the ideal world, I would love to see this case go in a different direction, but given the amount of time that's lapsed, I think it is really important for children to have some permanency and a plan of permanence." Thus, it was not in the children's best interest to extend the case "for another six months without giving some sort of permanency to these children."

As to visitation, Mother requested the court increase her visitation from the current level of three hours per week. The Department opposed increased visitation, arguing the legal guardian should decide how much visitation was appropriate given the children's school and friendships. Minors' counsel agreed the legal guardian would need to decide how much time the children could spend with Mother and Father. Mother's attorney noted Mother did not have a good relationship with the maternal aunt, and therefore Mother wanted "a safeguard" to ensure Mother had sufficient visitation. The court expressed a concern Danielle was not present to address this issue, and the court was not aware of the children's schedule of activities, so it did not have sufficient information on which to base an increase in visitation. After further argument of counsel, the court ruled Mother and Father would have 12 hours each month of visitation "to be divided as determined by the legal guardian monitored by Pastor Bojorquez or an agreed upon monitor or paid for by the parents."

With respect to the permanency planning hearing (§ 366.26), the court found by clear and convincing evidence the children were adoptable. However, they lived with a relative who was willing to provide legal guardianship but not adoption. The

court found it would be detrimental for the children to be returned to Mother's and Father's physical custody. The court appointed Danielle as the legal guardian, finding this was in the children's best interest, and included Mother's and Father's monthly visitation in the final order appointing Danielle as the guardian. The court terminated jurisdiction with "Kin-GAP" (Kinship Guardianship Assistance Payments) in place.

Mother timely appealed the January 7, 2020 orders.

## DISCUSSION

A.    *Governing Law*

Under section 388, subdivision (a)(1), a parent may petition to change, modify, or set aside any previously made order based on a change of circumstances or new evidence. As the moving party, the parent has the burden of showing by a preponderance of the evidence (1) a change in circumstances or new evidence and that (2) modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*); see Cal. Rules of Court, rule 5.570(h)(1)(D).) New evidence or a change in circumstances must be of such a significant nature that it requires modification of the challenged order. (*In re J.M.* (2020) 50 Cal.App.5th 833, 846 [mother established substantial change of circumstances by presenting uncontroverted evidence she had completed domestic violence programs, had no contact with father, had negative drug tests, addressed mental health issues, and had stable housing]; *In re A.A.* (2012) 203 Cal.App.4th 597, 612 [mother failed to show changed circumstances despite completion of services and programs while incarcerated because

16

she did not address her continued incarceration, which was the basis for termination of reunification services].) "[A] section 388 petition seeking reinstatement of reunification services or return of the child will necessarily involve a parent who has made mistakes sufficient to support termination of services at some point in the past. The question must be whether the changes the parent made since then are substantial enough to overshadow that prior determination, such that reunification is now in the child's best interests." (*In re J.M.*, at p. 848.)

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317; accord, *In re C.W.* (2019) 33 Cal.App.5th 835, 839; *In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

B.    *Standard of Review*
    Where the juvenile court finds the parent has not carried his or her initial burden to demonstrate changed circumstances or new material evidence, we review whether the evidence compels a finding in the parent's favor as a matter of law. (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 782; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 647; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of*

*O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)  "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W.*, at p. 1528.)

We review the juvenile court's best interest determination for an abuse of discretion.  (*Stephanie M., supra*, 7 Cal.4th at p. 318; accord, *In re I.B.* (2020) 53 Cal.App.5th 133, 153.)  ""'[A] reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"" (*Stephanie M.*, at p. 318; *In re I.B.*, at p. 153.)  ""'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"" (*Stephanie M.*, at pp. 318-319; accord, *In re I.B.*, at p. 153.)

C.  *The Juvenile Court Did Not Err in Denying Mother's Section 388 Petition*

Mother contends she showed changed circumstances because she completed a six-month substance abuse treatment program, an aftercare program, parenting classes, and anger management classes; participated in individual counseling; and tested negative for drugs.  But the juvenile court found Garcia, who provided the substance abuse treatment and administered the drug tests, was biased against the Department and the drug

tests he administered were unreliable.[7]  Although Mother argues on appeal Garcia was licensed as a substance abuse counselor, Garcia testified his program was licensed "as a community counseling agency," and Garcia did not have any counseling degrees, instead serving as a peer counselor.  Further, Garcia performed the urine analysis himself with a testing kit that indicated "1 Line = Drug" and "2 Lines = No Drug," instead of sending the sample to a laboratory.  The testing results simply stated the sample was positive or negative without providing any detail about the testing or the results, in contrast to the Department's testing laboratory.

Moreover, notwithstanding Mother's completion of the substance abuse program, she was in denial about her substance abuse problem.  She continued to blame her April 5, 2017 positive drug test result on a diet pill her friend gave her, and the May 22, June 15, and July 5, 2018 positive test results on errors by the drug testing site.  At the hearing Mother denied she told the social worker the positive testing results were incorrect with the exception of one test, instead acknowledging she was using drugs when she tested positive on June 7, 2017, May 22, 2018, and June 15, 2018.  But the juvenile court found Mother's testimony that she never blamed the tests on the testing site not credible.  As to the July 5, 2018 positive test, Mother claimed she was not aware of the testing result and was not using drugs at that time.

---

[7]  The juvenile court explained that it required parents to submit to testing conducted by reliable agencies, which were typically Department-approved, and "almost always" Pacific Toxicology (which analyzed Mother's prior drug tests).

Further, the court found Mother's testimony not credible that the criminal case against Father (with whom Mother was living as of April 1, 2019) was terminated because law enforcement had fabricated the case and lied about his drug use. To the contrary, the criminal court minute order showed the court dismissed the drug charges against Father only after he completed a pretrial diversion program. On these facts, the evidence Mother presented of her completion of a substance abuse program and testing negative for methamphetamine to show she had regained her sobriety was not "'uncontradicted and unimpeached' and . . . 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W., supra*, 180 Cal.App.4th at p. 1528; see *In re Elizabeth M., supra*, 19 Cal.App.5th at p. 782.)

Mother argues if the Department was concerned about the reliability of her drug tests, it should have asked her to submit to drug testing so the Department could confirm she was sober. But Mother had the burden of proof to show she had addressed her substance abuse problem, not the Department. (*In re J.M., supra*, 50 Cal.App.5th at p. 846 ["A parent establishes a substantial change of circumstances for purposes of section 388 by showing that, during the period between termination of reunification services and the permanency planning hearing, he or she has resolved the previously unresolved issues supporting juvenile court jurisdiction."]; *In re A.A., supra*, 203 Cal.App.4th at p. 612.)

Even if Mother had established changed circumstances, the juvenile court did not abuse its discretion in finding it would not be in the children's best interest to grant Mother's section 388 petition. Mother failed to rebut the presumption that the

children's continued placement with Danielle and termination of reunification services was in their best interest. (*Stephanie M., supra*, 7 Cal.4th at p. 317; *In re I.B., supra*, 53 Cal.App.5th at p. 159.) Although Mother and the children had a strong bond and the children wanted to return to Mother's home, the children had been placed with Danielle for two and a half years (since June 2017). The children were happy in Danielle's home, and their behavior had improved since living with the maternal aunt. Further, as to Mother's request to modify the visitation order, as discussed, the court questioned whether Mother had reliably tested negative for methamphetamine since the termination of reunification services on October 23, 2018, or completed an appropriate substance abuse program. On these facts, the court did not abuse its discretion in concluding it was "really important for [the] children to have some permanency" through a legal guardianship, and that extending the dependency case for another six months or modifying the visitation order[8] was not in the children's best interest.[9]

---

[8]    As discussed, the juvenile court also declined to increase the parents' visitation because Danielle was not present at the hearing and the court did not have sufficient information on the children's activities to assess whether additional visitation was in the children's best interest. Mother did not provide information to the court on how increased visitation would affect the children's schedule, nor did she request the court continue the hearing to obtain additional information.

[9]    Because we affirm the juvenile court's order denying Mother's section 388 petition, we also affirm the juvenile court's order granting legal guardianship and terminating jurisdiction.

## DISPOSITION

We affirm the orders denying Mother's section 388 petition and appointing the maternal aunt as the legal guardian.

FEUER, J.

We concur:


PERLUSS, P. J.


RICHARDSON, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.